UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, a minor,
through his parent and "next friend,"
MARY DOE;
MARY DOE, in her individual capacity;
RICHARD DOE, in his individual capacity;

      Plaintiffs,

v

WEST SHORE EDUCATIONAL SERVICE DISTRICT;
AMY MESYAR, in her individual and official capacity;
LISA VANDRUNEN, in her individual and official capacity;
SONDRA WEINERT, in her individual and official capacity;
BENJAMIN PAETZ, in his individual and official capacity;

      Defendants.

Case No. 1:26-cv-01084
Hon.

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorney for Plaintiffs
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

---

**COMPLAINT AND JURY DEMAND**

INTRODUCTION

NOW COMES Plaintiffs John Doe, Mary Doe, and Richard Doe, by and through their

attorneys, Delaporte Lynch, PLLC, and file their Complaint for claims under 20 U.S.C. §1681 *et*

*seq*. ("Title IX"), for failure to prevent, remedy, and investigate sex- and gender-based assault,

1

battery, and abuse; 42 U.S.C. § 1983 as a vehicle for claims for violations of the First Amendment, Fourteenth Amendment Due Process Clause, and Fourth Amendment Protection Against Unlawful Seizures of the U.S. Constitution; violations of Article I, §§ 17 and 26 of the Michigan Constitution; violations of the Americans with violations of the Michigan Elliott-Larsen Civil Rights Act; violation of the Michigan Constitution; and Michigan common law assault, battery, intentional infliction of emotional distress, grossly negligent infliction of emotional distress (in the alternative, gross negligence), false imprisonment, violation of personal security, violation of personal liberty, and civil conspiracy.

<u>JURISDICTION AND VENUE</u>

1. During all material times, Plaintiff Mary Doe was a resident of Ludington, Michigan, and is the mother and legal guardian of John Doe, a minor special needs child.

2. During all material times, Plaintiff John Doe was a minor special needs child and a resident of Ludington, Michigan.

3. During all material times, Plaintiff Richard Doe was Mary Doe's partner and a resident of Ludington, Michigan.

4. During all material times, Defendant West Shore Educational Service District (hereinafter, "West Shore ESD") was a public entity located in Ludington, Michigan, tasked with providing educational services to students with disabilities.

5. During all material times, Defendant Amy Mesyar was the principal at West Shore ESD and responsible for the safety, education, and security of students at West Shore ESD, including John Doe.

6. During all material times, Defendant Lisa Vandrunen was John Doe's teacher at West Shore ESD and responsible for John Doe's direct care, safety, education, and supervision.

7. During all material times, Defendant Sondra Weinert was a teacher's aide in John Doe's classroom at West Shore ESD and responsible for John Doe's direct care, safety, education, and supervision.

8. During all material times, Defendant Benjamin Paetz was a teacher's aide in John Doe's classroom at West Shore ESD and responsible for John Doe's direct care, safety, education, and supervision.

9. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert claims arising under federal law, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, based on sexual harassment and/or abuse, assault, retaliation, and the creation of a hostile educational environment.

10. This Honorable Court maintains supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same set of facts as the federal claims.

11. Venue is proper pursuant to 28 U.S.C. §1391 because all of the acts complained herein occurred within the boundaries of this Honorable Court's territorial jurisdiction.

12. Thus, legal jurisdiction and venue are proper in this Honorable Court.

<u>FACTUAL ALLEGATIONS</u>

13. Plaintiff John Doe is an nine-year-old special needs student with autism.  His condition impacts the resilience of his skin.

14. John Doe is nonverbal, requires enteral nutrition via feeding tube, and, at the time of the events underlying this complaint, wore diapers and was pursuing toilet training.

15. John Doe has, and had, an Individualized Education Plan ("IEP").

16. John Doe's conditions require continuous and heightened support from caregivers and school staff.

17. Until the 2023-24 school year, John Doe attended Ludington School District in a classroom with similarly aged peers.

18. For the 2023-24 school year, John Doe was transferred to a classroom at West Shore ESD that included students ranging from approximately 7 to 16 years old.

19. Upon learning of John Doe's transfer to West Shore ESD, Mary Doe contacted the school to express concerns regarding the appropriateness of such an environment for John Doe.

20. Mary Doe expressed concern that West Shore ESD could not provide a suitable environment for John Doe because of his difficulties communicating verbally, therefore making him more susceptible to bullying or exploitation.

21. While at West Shore ESD, John Doe repeatedly came home with unexplained bruises, and physical injuries, which caused Mary Doe to suspect neglect, abuse, and/or improper supervision of her son; Mary Doe raised her concerns with West Shore ESD, but nothing was done.

22. He further exhibited increased signs of emotional distress, including increased flinching and an aversion to attending school.

23. On or about August 10, 2023, another student physically grabbed John Doe, leaving visible bruises.

24. On or about early December 2023, a student pushed John Doe to the ground, causing a gash on John Doe's head.  Following this incident, Mary Doe requested that John Doe be transferred back to Ludington.

25. On January 8, 2024, Mary Doe's partner, Richard Doe, dropped John Doe off at school.

26. John Doe arrived at school on January 8 without any visible injuries aside from minor skin irritation in the creases of his inner thighs from a potty-training splash guard and the wipes used to clean John Doe.

27. Richard Doe's interactions on January 8, 2025, with John Doe were captured on home surveillance video, documenting only peaceful interactions between the two before their departure.

28. Richard Doe left home at the usual time, made no stops, and arrived at West Shore ESD at approximately 8:59 AM.

29. Richard Doe and John Doe were seen entering West Shore ESD holding hands and being affectionate.

30. At approximately 9:17 AM, a teacher texted Mary Doe, reporting that John Doe had scratches between his legs and some blood on his diaper, allegedly from the splash guard irritation; the irritation would not have caused scratches or blood on John Doe's diaper.

31. When John Doe was picked up from school he was acting hurt and scared; John Doe has since expressed dread of returning to West Shore ESD.

32. When John Doe returned home that day, Mary Doe observed new injuries, including a cut on top of his penis and significant bruising that had not been present when he was dropped off at school.

33. The bruising was consistent with someone tightly gripping John Doe's legs, forcing his legs open, and macerating his genitals.

34. Upon discovering the injuries, Mary Doe immediately contacted Lisa Vandrunen at 3:42 PM, demanding an explanation.

35. Vandrunen acknowledged that she observed the bruising darken during the day.

36. Staff allegedly reported to Principal Meysar that they observed John Doe's injuries throughout the school day, and that the bruising progressively worsened.

37. Despite knowledge of John Doe's injuries, no one at West Shore ESD sought medical intervention for John Doe, nor did any employees notify Mary Doe or contact Child Protective Services.

38. Upon realizing John Doe was injured and not recovering, Mary Doe took John Doe to the Emergency Room that evening.

39. Triamcinolone acetonide was applied to the irritated area, which failed to have a curative effect.  She switched treatment to Neosporin after an ER visit that occurred the evening of January 8, 2024, and the injury healed over time.

40. At approximately 5:05 PM, Mary Doe texted the school principal relaying the severity of John Doe's injuries.  At approximately 5:15 PM, she messaged his teachers and relayed her intention to report West Shore ESD to Child Protective Services ("CPS").

41. Despite observing the injuries earlier in the day, prior to 5:15PM, West Shore ESD had not filed, and did not intend to file, a CPS report.

42. West Shore ESD neglected to contact CPS until 5:42 PM, when it filed a blame-shifting retaliatory CPS report to divert attention away from its own actions and inactions.

43. West Shore ESD attempted to shift blame onto Mary Doe, an innocent party, only after learning that Mary Doe intended to report the incident herself.

44. Based on West Shore ESD's report, Michigan State Police ("MSP") officials shifted their focus onto Mary Doe and her partner, Richard Doe, despite no evidence of abuse occurring at home.

45. During a February 6, 2024, meeting with MSP and CPS, investigators produced photos taken by West Shore ESD on October 25-26, 2023, showing a red mark on John Doe's face.

46. The red mark resulted from Richard Doe wiping discharge from John Doe's eyes, a condition of his skin tied to his autism.

47. The red mark was unavoidable, and proof that Richard Doe cared for John Doe, not evidence of abuse.

48. Despite possessing these photos, the school had not previously reported any concerns to CPS.

49. Provision of the photos only after Mary Doe contacted CPS to report West Shore ESD personnel's child abuse can only be interpreted as retaliatory and fraudulent.

50. West Shore ESD's employees are mandatory reporters under the Child Protection Law, and if the photographs actually depicted child abuse or neglect, the employees would have violated the Child Protection Law and subjected themselves to both criminal penalty and potential civil liability for not reporting the incident on October 25-26, 2023.

51. The red mark was a red herring introduced to distract from Defendants' inability to explain away John Doe's January 8, 2024, injuries.

52. To date, no credible explanation has been provided for how the January 8, 2024, injuries occurred.

53. MSP relied on outdated photos provided by West Shore ESD to suggest that John Doe's injuries were pre-existing rather than properly investigating the January 8, 2024, incident.

54. Due to safety concerns, John Doe has not returned to West Shore ESD since the January 8, 2024, incident, and is, instead, being homeschooled.

7

55. Mary Doe faced truancy threats despite her ongoing cooperation with CPS and law enforcement.

56. Defendants failed to properly supervise John Doe while he was in their custody and care.

57. Defendants failed to timely investigate and report injuries sustained by John Doe while at West Shore ESD (including injuries that could have been, and likely were, caused by Defendants themselves).

58. Defendants attempted to deflect responsibility and place blame on Mary Doe and her family.

59. Defendants' failure to supervise, report, investigate, and remediate the conditions and/or actions which resulted in John Doe's injuries is deliberate indifference.

60. Defendants were deliberately indifferent to the assault of John Doe's genitals, a violation of Title IX.

61. As a direct result of Defendants' actions and omissions, John Doe suffered physical injuries, emotional distress, and deprivation of his right to a safe and appropriate education.

62. Defendants' actions resulted in John Doe's removal from his educational environment, constituting a violation of his federal and state rights.

63. Defendants' attempts to shift blame onto Mary Doe and Richard Doe resulted in them being implicated for child abuse and/or neglect for which they were not responsible.

64. Mary Doe and Richard Doe were subjected by West Shore ESD to fear, shame, retaliation, and emotional distress, as well as the potential for criminal prosecution.

65. All Defendants named herein harmed John Doe, Mary Doe, and Richard Doe.

## COUNT I

*Violation of Title IX as to West Shore ISD, 20 U.S.C. §11681*

66. Plaintiffs incorporate the previous paragraphs as if contained herein.

67. The sex-based abuse articulated in the Plaintiff's Complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational benefits provided by the school.

68. Defendants created and/or subjected John Doe to a hostile educational environment in violation of Title IX because:

    a. Plaintiff was a member of a protected class;

    b. he was subjected to sexual abuse by a West Shore ISD school employee, official, and/or teacher,

    c. he was subjected to sexual abuse based on his sex; and

    d. he was subjected to a hostile educational environment created by the School District's failure to properly investigate and address the sexual abuse, and failure to protect Plaintiff from his attacker's subjugation and presence, and, given the likelihood that the sexual assault was promulgated by one or more of the Defendants, by the District's deliberate indifference.

69. The District received actual notice of John Doe's sexual abuse, as evinced by the various employees and/or staff who knew of the abuse during the school day.

70. The District had a duty to respond promptly and effectively to prevent and protect John Doe from being further victimized and to minimize and remedy the damages John Doe experienced from the assault.

71. The District had a further duty to address the effects of the sexual abuse, prevent its recurrent effects, conduct a thorough investigation of all relevant facts, determine what occurred, and take appropriate steps to resolve the situation.

72. West Shore ISD did not conduct a Title IX investigation, let alone perform any investigation into the matter.  West Shore ISD instead retaliated against Mary Doe in response to her informing the District that she would file a CPS report against the school.

73. The District failed in all of its legal duties that it owed to John Doe.

74. As a result of these the ISD's failures, John Doe has been harmed physically, mentally, and emotionally, thereby suffering both economic and non-economic damages.

75. Defendants' failure to promptly and appropriately respond to the sexual harassment/abuse resulted in Plaintiff, based on his sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the School District's education programs in violation of Title IX.

76. This policy constitutes disparate treatment of male students of sexual assault and has a disparate impact on male victims of sexual assault.

77. Defendants' actions were intentional, willful, and in reckless disregard of Plaintiff's rights under Title IX.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find: that Defendants Violated Title IX by discriminating against Plaintiffs on the basis of gender and/or sex; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further discriminating and retaliating against Plaintiffs for their protected reports under Title IX, including by being deliberately indifferent to

Title IX violations; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT II

*Gross Negligence (Plead In The Alternative)*
*as to all Defendants*

78. Plaintiffs incorporate the previous paragraphs as if contained herein.

79. Defendants owed John Doe a duty of care to protect him from foreseeable harm while he was under their supervision and control.

80. "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

81. Grossly negligent conduct must be conduct that is "substantially more than negligent." *Bellinger v. Kram*, 319 Mich. App. 653, 659-60 (2017) (citing *Maiden v. Rozwood*, 461 Mich. 109 (1999)).

82. "[E]vidence that a defendant engaged in affirmative actions contrary to professionally accepted standards and then sought to cover up those actions does establish gross negligence*." Bellinger*, 319 Mich. App. at 660.

83. Defendants' failure to supervise, investigate, and protect a nonverbal disabled minor from sexualized physical abuse demonstrates a substantial lack of concern for John Doe's safety.

84. As a direct and proximate result of Defendants' conduct, John Doe suffered physical and emotional injury, and experienced economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants actions constituted gross negligence; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with

11

them from further gross negligence; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

<u>COUNT III</u>

*Violation of the Elliott-Larsen Civil Rights Act*
**Discrimination and Retaliation**
*as to all Defendants*

85. Plaintiffs incorporate the previous paragraphs as if contained herein.

86. The Elliott-Larsen Civil Rights Act makes it unlawful for an educational institution to "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2402(a).

87. Under the act, "[d]iscrimination because of sex includes sexual harassment." MCL 37.2103(i).

88. It is further unlawful for an educational institution to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701.

89. Defendants West Shore ESD, Amy Meysar, Lisa Vandrunen, Sonia Weinert, and Benjamin Paetz, discriminated against John Doe on the basis of his sex when they either engaged in, or were notified of, the sexual and gender-based assault resulting in bruising and laceration to John Doe's genitals, yet failed to protect him.

90. Defendants West Shore ESD, Amy Meysar, Lisa Vandrunen, Sonia Weinert, and Benjamin Paetz, discriminated against John Doe on the basis of his sex when they either

12

engaged in, or were notified of, the sexual and gender-based assault resulting in bruising and laceration to John Doe's genitals, yet failed to conduct an adequate investigation.

91. Defendants' failure to adequately respond to the sexual abuse prevented John Doe from receiving the full benefit of his education at the school

92. Defendants further deprived John Doe of access to education by falsely reporting Richard Doe to CPS to cover up the District's wrongdoing and in retaliation for Mary Doe informing the District that she intended to call CPS on Defendants.

93. Defendants' false report of Richard Doe created and facilitated an educational environment that was so unsafe and retaliatory, that Mary Doe was forced to withdraw her son from school.

94. As a result of Defendants' discrimination, John Doe has been harmed physically, emotionally, and mentally, thereby suffering both economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants violated the Elliott-Larsen Civil Rights Act discriminating against Plaintiffs on the basis of gender and/or sex; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further discriminating and retaliating against Plaintiffs for their protected reports under Title IX, including by being deliberately indifferent to Title IX violations; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT IV

*Violation of Article I, Section 26 of Michigan Constitution*
*as to all Defendants*

95. Plaintiffs incorporate the previous paragraphs as if contained herein.

96. Article I, § 26 of the Michigan Constitution prohibits discrimination against individuals on the basis of sex in public education.

97. Defendants West Shore ESD, Amy Meysar, Lisa Vandrunen, Sonia Weinert, and Benjamin Paetz, discriminated against John Doe on the basis of his sex when they either engaged in, or were notified of, the sexual and gender-based assault resulting in bruising and laceration to John Doe's genitals, yet failed to conduct an investigation.

98. Defendants discriminated against John Doe and Mary Doe by failing to respond to the sexual abuse against a male student, John Doe.

99. Defendants' discrimination prevented John Doe from receiving the full benefit of his education at the school.

100. Defendants further discriminated against John Doe, Mary Doe, and Richard Doe by falsely reporting Richard Doe to CPS to cover up the District's wrongdoing.

101. As a result of Defendants' discrimination, John Doe has been harmed physically, emotionally, and mentally, thereby suffering both economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants violated the Article I, § 26 of the Michigan Constitution by discriminating against Plaintiffs on the basis of gender and/or sex; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further discriminating against Plaintiff based on sex in violation of Article I, § 26 of the Michigan Constitution; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

COUNT V

*Intentional Infliction of Emotional Distress*
*as to all Defendants*

102.    Plaintiffs incorporate the previous paragraphs as if contained herein.

103.    All Defendants, or those acting on behalf of, or conspiring with Defendants, engaged in retaliatory conduct towards Plaintiffs, including, but not limited to, intentionally refusing to investigate the sexual abuse of John Doe and falsely reporting Richard Doe to CPS.

104.    Defendants dismissed John Doe's physical assault and acted with deliberate indifference.

105.    Defendants refused to intervene or provide the necessary protections to John Doe, despite their knowledge of the incident and their obligations state, federal, and constitutional law.

106.    The Defendants' conduct was extreme, outrageous, and went beyond all bounds of decency, including:

   a.  Abusing John Doe by bruising and lacerating his genitals;

   b.  Intentionally ignoring Mary Doe's reports of John Doe's abuse, even after clear evidence was presented, such as visible bruising and laceration on his genital area; and,

   c.  Making a false CPS report against Richard Doe.

107.    The extreme and outrageous conduct by Defendants caused Plaintiffs significant emotional distress, including but not limited to feelings of helplessness, fear, and frustration.

108. Defendants' extreme and outrageous conduct ultimately forced Mary Doe to remove John Doe from the educational environment at West Shore ESD, altogether, after the District refused to provide John Doe with an appropriate alternative educational environment.

109. As a direct result of Defendants' intentional and egregious conduct, Plaintiffs suffered severe emotional distress, endured a diminished quality of life, and lost the enjoyment of daily life.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants intentionally inflicted emotional distress upon Plaintiffs; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further intentionally inflicting emotional distress upon Plaintiffs; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

<u>COUNT VI</u>

*Grossly Negligent Infliction Of Emotional Distress*
*as to all Defendants*

110. Plaintiffs incorporate the previous paragraphs as if contained herein.

111. Defendants engaged in conduct so reckless and indifferent to the safety and emotional well-being of Plaintiffs that it constituted gross negligence.

112. It was foreseeable that failing to protect a nonverbal autistic child from sexual abuse and then retaliating against his family would cause severe emotional distress.

113. As a direct and proximate result of Defendants' conduct, John Doe suffered physical and emotional injury, and experienced economic and non-economic damages. .

16

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants negligently inflicted emotional distress upon Plaintiffs; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further negligently inflicting emotional distress upon Plaintiffs; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT VII

*Civil Assault*
*as to Vandrunen, Weinert, and Benjamin Paetz*

114. Plaintiffs incorporate the previous paragraphs as if contained herein.

115. To recover civil damages for assault, plaintiff must show an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482-83 (2004) (citing *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991).

116. Defendants intentionally engaged in conduct creating harmful or offensive contact with John Doe's genital area.

117. The circumstances created an imminent apprehension of harmful contact.

118. As a direct and proximate result of Defendants' civil assault, John Doe suffered physical and emotional injury.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants civilly assaulted John Doe; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from

assaulting John Doe or any other student or person in the District; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

COUNT VIII

*Civil Battery*
*as to Vandrunen, Weinert, and Paetz*

119. Plaintiffs incorporate the previous paragraphs as if contained herein.

120. To recover for battery, plaintiff must demonstrate a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004).

121. While John Doe was under their supervision of Defendants Weinert and Paetz, Defendants intentionally caused a harmful and offensive touching to his John Doe's genital/private area.

122. Defendants Vandrunen, Weinert, and/or Paetz's touching caused visible bruising.

123. Defendant's Vandrunen, Weinert, and/or Paetz's touching was nonconsensual and intentional.

124. John Doe, as a nonverbal autistic minor, could not consent to such contact.

125. As a direct and proximate result of Defendants' battery, John Doe suffered physical and emotional injury.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants committed a battery against John Doe; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from battering John Doe or any other student or person in the District; award Plaintiffs their

18

damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

COUNT IX

*Unlawful Seizure in Violation of the Fourth Amendment*
*Via* 42 U.S.C. § 1983
*as to Vandrunen, Weinert, and Paetz*

126.   Plaintiffs incorporate the previous paragraphs as if contained herein

127.   Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

128.   Defendants were acting under color of state law.

129.   John Doe was compelled to endure the harmful touching as described in the preceding paragraphs and was not free to leave.

130.   Defendants subjected John Doe to unreasonable and excessive physical contact involving his genital area.

131.   The seizure and use of force were objectively unreasonable.

132.   As a result, John Doe suffered injury and deprivation of his constitutional rights.

133.   As a direct and proximate result of Defendants' conduct, John Doe suffered physical and emotional injury, and experienced economic and non-economic damages. .

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants unlawfully seized John Doe in violation of the Fourth Amendment of the United States Constitution; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from assaulting John Doe or any other student or person in the District; award Plaintiffs their damages, including compensatory and

19

punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT X

*False Imprisonment*
*as to Vandrunen, Weinert, and Paetz*

134.    Plaintiffs incorporate the previous paragraphs as if contained herein.

135.    The elements of false imprisonment are "(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh v. Taylor*, 263 Mich. App. 618, 627 (2004).

136.    "False imprisonment also requires that '[t]he restraint ... occurred without probable cause to support it.'" *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (quoting *Walsh v. Taylor*, 263 Mich.App. 618 (2004)).

137.    Defendants intentionally confined John Doe within the school setting.

138.    The confinement directly resulted in his exposure to harmful physical contact.

139.    The confinement was without lawful justification.

140.    John Doe was conscious of and affected by the confinement.

141.    John Doe was harmed by his confinement, as evinced by the bruising and laceration of his genitals.

142.    As a direct and proximate result of Defendants' conduct, John Doe suffered physical and emotional injury, and experienced economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants falsely imprisoned John Doe; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from

20

falsely imprisoning John Doe  or any other student or person in the District; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

COUNT XI

*Retaliation in Violation of the First Amendment (through 42 U.S.C. 1983)*
*as to all Defendants*

143. Plaintiffs incorporate the previous paragraphs as if contained herein.

144. Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

145. The Fourteenth Amendment Due Process Clause fully incorporates the rights contained in the First Amendment. *McDonald v. City of Chi*., 561 U.S. 742, 763 (2010).

146. The First Amendment guarantees citizens the right to freedom of speech, and requires that debate on public issues be "uninhibited, robust, and wide open." *Bond v. Floyd*, 385 U.S. 116, 118 (1966).

147. The First Amendment further prohibits government officials from subjecting individuals to "retaliatory actions" after the fact for having engaged in protected speech. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022).

148. "To establish an adverse action for First Amendment retaliation purposes, 'a plaintiff must show that the action 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019).

149. Defendants discriminated against the Does for Mary Doe's protected speech activity, including, but not limited to, reporting severe and pervasive gender- and

21

disability-based harassment, retaliation, discrimination, and assault to the school district.

150.    Defendants' discrimination took the form of punishing John Doe 1 for manifestations of his disability; responding with deliberate indifference to the Mary Doe's reports of severe and pervasive gender- and disability-based harassment, retaliation, discrimination, and assault; and falsely reporting Plaintiff Richard Doe to CPS.

151.    Defendants' actions were contrived to have a chilling effect on Plaintiffs' free speech, such that a reasonable person would reasonably fear the consequences of speaking out against the Defendants' actions further.

152.    Defendants' acts were intentional, malicious, willful, wanton, and in reckless disregard of Plaintiff's constitutional rights.

153.    As a direct and proximate result of Defendants' conduct, John Doe suffered physical and emotional injury, and experienced economic and non-economic damages. .

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants retaliated against Plaintiffs for Mary Doe's exercise of her free speech rights under the First Amendment of the United States Constitution; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further retaliating against Plaintiffs; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

COUNT XII

*Violation of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12201, et seq.*
**Discrimination and Retaliation**
*as to all Defendants*

154. Plaintiffs incorporate the previous paragraphs as if contained herein.

155. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

156. "The remedies available for violations of Title II of the ADA and § 505 of the Rehabilitation Act are 'coextensive' with those for Title VI." *Jones v. City of Detroit*, 20 F.4th 1117, 1119 (6th Cir. 2021).

157. John Doe is a qualified individual with a disability within the meaning of the ADA in that he has autism spectrum disorder and is nonverbal.

158. Defendants West Shore ISD is a public school district subject to the ADA.

159. Defendants were aware of John Doe's disability.

160. Defendants failed to provide reasonable accommodations to ensure his safety.

161. Defendants failed to safeguard a uniquely vulnerable nonverbal student.

162. After Mary Doe advocated for her son and reported the abuse, Defendants retaliated by initiating a false CPS complaint against Mary Doe and Richard Doe and by threatening truancy proceedings when Mary Doe removed her son from an unsafe educational environment.

163. Defendants' actions were because of John Doe's disability and in retaliation for protected advocacy activity under the ADA.

164.    As a direct and proximate result of Defendants' conduct, John Doe suffered physical and emotional injury, and experienced economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants discriminated and retaliated against Plaintiffs in violation of the ADA; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further discriminating or retaliating against Plaintiffs; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

COUNT XIII

*Violation of the Persons with Disabilities Civil Rights Act ("PWDCRA") MCL 37.1101, et seq.*
***Discrimination and Retaliation***
*as to all Defendants*

165.    Plaintiffs incorporate the previous paragraphs as if contained herein.

166.    Pursuant to the PWDCRA, a school district "shall accommodate a person with a disability for purposes of . . . education . . . unless the person demonstrates that the accommodation would impose an undue hardship."

167.    The PWDCRA prohibits retaliation or discrimination "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.1602.

168.    John Doe is an individual with autism spectrum disorder, a well-recognized disability under the PWDCRA.

169.    Defendants were aware of John Doe's disability.

24

170.    Defendants failed to provide reasonable accommodations necessary to ensure his safety and equal access to educational services.

171.    Defendants failed to protect a nonverbal disabled student from sexual abuse and physical injury while under their supervision.

172.    After Plaintiffs reported the abuse and advocated for corrective action, Defendants retaliated by initiating an unfounded CPS complaint and by threatening truancy enforcement.

173.    Defendants' actions deprived John Doe of the full and equal enjoyment of educational services because of his disability.

174.    As a direct and proximate result of Defendants' conduct, John Doe suffered physical and emotional injury, and experienced economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants discriminated and retaliated against Plaintiffs in violation of the ADA; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further discriminating or retaliating against Plaintiffs; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

COUNT XIV

*Violation of Right to Personal Security Liberty Interest (through 42 U.S.C. § 1983)*
*as to all Defendants*

175.    Plaintiffs incorporate the previous paragraphs as if contained herein.

176.    Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

177.    The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV.

178.    "[T]he right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause." *Lipman v. Budish*, 974 F.3d 726, 746 (6th Cir. 2020).

179.    Defendants violated John Doe's right of personal security when they committed an assault and battery of his body, causing bruising and laceration to his genital area.

180.    As a direct and proximate result of Defendants' violation of John Doe's personal security, John Doe suffered physical and emotional injury.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants violated Plaintiffs' right to personal security; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from violating Plaintiffs' right to personal security; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT XV

*Violation of the Due Process Clause of the Michigan Constitution*
*as to all Defendants*

181.    Plaintiffs incorporate the previous paragraphs as if contained herein.

182.    Article I § 17 of the Michigan Constitution states, "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." Const 1963, art I, § 17.

183.    Defendants' conduct in disciplining the victim by falsely reporting John Doe's mother and Richard Doe to CPS, by threatening truancy action against John Doe because of his mother's choice to remove her son from a violent and unsafe educational

26

environment, and by not disciplining the perpetrator(s) at the school District, violated the Plaintiffs' due process rights.

184.    By taking the actions detailed in this Complaint, Defendants violated the Plaintiffs' Due Process rights under the Michigan Constitution by depriving them of their liberty and property interests without due process of law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants violated Plaintiffs due process rights; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further violating Plaintiffs due process rights; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT XVI

*Violation of the Due Process Clause of the United States Constitution*
*as to all Defendants*

185.    Plaintiffs incorporate the previous paragraphs as if contained herein.

186.    Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

187.    The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV.

188.    Defendants' conduct in disciplining the victim by falsely reporting John Doe's mother and Richard Doe to CPS, by threatening truancy action against John Doe because of his mother's choice to remove her son from a violent and unsafe educational

environment, and by not disciplining the perpetrator(s) at the school District, violated the Plaintiffs' due process rights.

189.    By taking the actions detailed in this Complaint, Defendants violated the Plaintiffs' Due Process rights under the United States Constitution by depriving them of their liberty and property interests without due process of law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants violated Plaintiffs due process rights; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further violating Plaintiffs due process rights; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

<u>COUNT XVII</u>

*Civil Conspiracy*
*as to all Defendants*

190.    Plaintiffs incorporate the previous paragraphs as if contained herein.

191.    Under Michigan common law, a civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Swain v. Morse*, 332 Mich. App. 510, 530 (2020).

192.    All of the actions taken by all Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done by Defendants while acting under color of state law.

193.    Defendants concerted actions include, but are not limited to, the failure to promptly and effectively investigate the complaints of sexual and gender-based harassment and

assault reported by John Doe; the disregard of Plaintiff's reports of harassment; disregard for the safety and well-being of Plaintiff; the retaliatory suspension of John Doe from school; the failure to implement and enforce policies and procedures that adequately protect students from sexual and gender-based harassment and assault.

194.    Defendants' wrongful acts were carried out in concert in order to deprive Plaintiff of their Constitutional rights.

195.    Defendants' acts were conspiratorial, intentional, malicious, willful, wanton, and in reckless disregard of Plaintiffs' Constitutional rights, in violation of federal and state law.

196.    Defendants' acts were the cause of Plaintiffs' injuries and damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: find that Defendants discriminated and retaliated against Plaintiffs in violation of the PWDCRA; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from further discriminating or retaliating against Plaintiffs; award Plaintiffs their damages, including compensatory and punitive damages; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Honorable Court do the following:

a. Find that Defendants violated Counts I-XVII.

b. Award Plaintiffs all appropriate compensation, fines, and penalties against Defendants available under law.

c. Award Plaintiffs economic and non-economic damages based on the violations detailed herein.

d. Award Plaintiffs injunctive relief.

e.   Award Plaintiffs their attorney fees and costs.

f.   Provide any other relief to Plaintiffs that this Honorable Court deems fit.


DELAPORTE LYNCH, PLLC


Dated: April 1, 2026

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
Attorneys for Plaintiffs
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

30

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN DOE, a minor;
through his parent and "next friend," MARY DOE;
MARY DOE, in her individual capacity,
RICHARD DOE, in his individual capacity,

                                     Case No. 1:26-cv-01084

      Plaintiffs,                           Hon.

v

WEST SHORE EDUCATIONAL SERVICE DISTRICT;
AMY MESYAR, in her individual and official capacity;
LISA VANDRUNEN, in her individual and official capacity;
SONDRA WEINERT, in her individual and official capacity;
BENJAMIN PAETZ in his individual and official capacity;

      Defendants.

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorney for Plaintiffs
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

---

## JURY DEMAND

In accordance with Federal Rule of Civil Procedure 38, Plaintiffs formally demand a trial by jury.

DELAPORTE LYNCH, PLLC

Dated: April 1, 2026

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
Attorneys for Plaintiffs
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

32